**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**DEBORAH BUFFKIN**                                                                    **PLAINTIFF**

**v.**                                              **5:10CV00079-BRW**

**MICHAEL J. ASTRUE, Commissioner,**                                **DEFENDANT**
**Social Security Administration**

<u>**ORDER**</u>

Plaintiff Deborah Buffkin seeks review of a decision by the Commissioner of the Social

Security Administration denying her claim for Disability Insurance Benefits under Title II of the

Social Security Act.[1]  Both parties have filed briefs.[2]

As explained below, the decision of the Commissioner is AFFIRMED, and Plaintiff's

appeal is DENIED.

**I.      STANDARD**

The Commissioner's decision must be affirmed if it is supported by substantial evidence

in the record as a whole.[3]  "Substantial evidence is less than a preponderance, but enough so that

a reasonable mind might find it adequate to support the conclusion."[4]  If the record would

support two inconsistent positions, and one of those positions represents the Commissioner's

findings, I must affirm the Commissioner's decision.[5]

---

[1]Doc. No. 2.

[2]Doc. Nos. 10, 11.

[3]*Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

[4]*Id.*

[5]See *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

A social security claimant bears the burden of proving disability,[6] which is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[7] There is a five-step sequential evaluation process for determining whether a person is disabled:

> The Commissioner determines: (1) whether the claimant is engaged in substantial gainful activity, and if he is, disability benefits are denied; (2) whether the claimant has a medically severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities, including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting; (3) whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity, and if so, the claimant is disabled; (4) whether the impairment prevents the claimant from performing work he has performed in the past; (5) if the claimant is able to perform his previous work, he is not disabled; however, if the claimant cannot perform past work, the burden shifts to the Commissioner to prove that the claimant is able to perform other work in the national economy in view of [her] age, education, and work experience.[8]

If the ALJ determines that the individual is not disabled at any step, then evaluation of subsequent steps is unnecessary.[9]

---

[6]*Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996).

[7]20 C.F.R. § 404.1505(a).

[8]*Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).

[9]*Bartlett v. Heckler*, 777 F.2d 1318, 1319 (8th Cir. 1985).

## II.     BACKGROUND

### A.     Procedural History

In her application documents, Plaintiff alleged that she became disabled on June 16, 2006.[10]  After initial and reconsideration denials,[11] Plaintiff requested a hearing before an administrative law judge ("ALJ").[12]  A hearing was held on December 20, 2007, before ALJ David J. Manley.[13]  The ALJ denied Plaintiff's request for benefits in a written decision dated March 26, 2008.[14]  Plaintiff appealed the ALJ's decision to the Appeals Council, and she submitted additional evidence in support of her claim.[15]  The Appeals Council denied her request for review on January 29, 2010,[16] making the ALJ's decision the final decision of the Commissioner in this case.

### B.     Factual Background

At the time of the hearing, Plaintiff was 38 years old.[17]  She has a tenth-grade education and past work experience as a cashier, production worker, and patient transporter.[18]  The vocational expert testified that these jobs were unskilled and light (cashier and production

---

[10]Administrative Record ("A.R.") 83.

[11]A.R. 62, 70.

[12]A.R. 72.

[13]A.R. 35.

[14]A.R. 10.

[15]A.R. 78–79.

[16]A.R. 1.

[17]A.R. 40.

[18]A.R. 10.

worker) or medium (patient transporter).[19] Plaintiff received Social Security Disability benefits from July 1998 to January 2001, but was no longer able to receive benefits after her health improved.[20]

### 1.     Medical History in the Administrative Record

The medical evidence in the administrative record begins with a report from Dr. Henry L. Rogers about an upper endoscopy performed on Plaintiff on October 11, 1995.[21] The endoscopy showed multiple esophageal erosions, gastroesophageal reflux disease ("GERD"), and hiatus hernia with mild gastritis.[22] The pathology report from the procedure was normal.[23] Plaintiff underwent a second upper endoscopy on July 17, 1998, which showed a hiatus hernia, esophagitis, plaques in the mid-esophoagus, and large amounts of bile in the stomach.[24] A pathology and cytology report from this procedure was also normal.[25] On July 18, 1998, Plaintiff saw Dr. Tracy Philips and requested medication to treat her anxiety and to switch from oral hormone therapy to injections.[26] Dr. Philips diagnosed her with anxiety disorder and prescribed Prozac.[27] Dr. Phillips also prescribed Pepcid for gastrointestinal problems.[28] On July 23, 1998,

---

[19]A.R. 55–56.

[20]A.R. 41.

[21]A.R. 151-66.

[22]A.R. 165-66.

[23]A.R. 152.

[24]A.R. 161-64.

[25]A.R. 153-54.

[26]A.R. 286.

[27]*Id.*

[28]*Id.*

Dr. Phillips proscribed Vicodin for abdominal pain and Carafate to treat esophageal ulcers and bile gastritis.[29] On October 1, 1998, Dr. Phillips discontinued Prozac treatments and switched Plaintiff to Paxil and Clonazepam to treat her anxiety disorder.[30]

Plaintiff went to the Johnson Regional Medical Center ("JRMC") on February 25, 2005, with complaints of pain on her right side.[31] Medical imaging did not reveal a cause for her pain.[32] Dr. Dennis Jackson diagnosed the pain as resulting from the probable passage of a ureteral stone.[33] Plaintiff was proscribed Darvoset.[34] On April 18, 2005, Plaintiff returned to Dr. Rogers with complaints of diarrhea, nausea, and epigastric pain.[35] Dr. Rogers performed another upper endoscopy on April 20, 2005, that showed bile juice in the stomach and erosions in the antrum.[36] Dr. Rogers proscribed Carafate before meals and sleep to reduce the discomfort caused by excess bile.[37] Plaintiff returned to JRMC on July 14, 2005, with complaints of abdominal pain.[38] Medical imaging showed small calcifications between the L3-L4 vertebrae.[39] On August 2, 2005,

---

[29]A.R. 287.

[30]A.R. 291.

[31]A.R. 241-51.

[32]*Id.*

[33]A.R. 248.

[34]*Id.*

[35]A.R. 151.

[36]A.R. 157-58.

[37]A.R. 158.

[38]A.R. 231-40.

[39]A.R. 238.

Dr. Phillips saw Plaintiff for swelling and shortness of breath.[40] She was prescribed Lasix, Atenolol, Pepcid, and Carafate.[41] On August 10, 2005, Plaintiff went to JRMC for chest pain and shortness of breath.[42] Cardiologist Dr. Ayman Alshami noted that Plaintiff had a surgical history that included a cardiac cardterization in June 2004 and surgery to repair an atrial septal defect.[43]

From August 21, 2005, through September 29, 2005, Plaintiff was treated by Dr. Nancy Williams.[44] Plaintiff requested a medication change because the Zoloft was not helping with job stress and frequent crying.[45] Dr. Williams increased the dosage of Zoloft and noted that Plaintiff wanted to reapply for disability benefits.[46] On September 29, 2005, Plaintiff saw Dr. Williams because of a headache and nausea.[47] She was diagnosed with a migraine and depression.[48] On November 10, 2005, Plaintiff saw Dr. William Duncan for pain in her right flank and abdomen.[49] She was admitted to the hospital for treatment of pain and dehydration.[50] Medical imagining of

---

[40]A.R. 168.

[41]*Id.*

[42]A.R. 223.

[43]*Id.*

[44]A.R. 172-75.

[45]A.R. 175.

[46]*Id.*

[47]A.R. 174.

[48]*Id.*

[49]A.R. 208.

[50]A.R. 209.

Plaintiff's abdomen, pelvis, and chest showed no abnormalities.[51] On November 11, 2005, a ureteroscopy procedure was performed, but again the results did not reveal any abnormalities.[52]

On March 2, 2006, Plaintiff went to the emergency room at the Baptist Medical Center ("Baptist") with complaints of tenderness in her right flank.[53] Lab reports and a CT scan were normal.[54] Plaintiff was prescribed Flexeril and Lortab to treat chronic pain syndrome.[55] On May 22, 2006, Plaintiff returned to Baptist with complaints of chest pain on her left side and nausea.[56] A cardiac catheterization was performed on May 24, 2006.[57] On May 26, 2006, an upper endoscopy showed antral gastritis.[58] Plaintiff was discharged from Baptist with a diagnosis of chest pain from an unknown cause, irritable bowel syndrome, and constipation.[59]

On February 15, 2007, Dr. Abdalla Tahiri performed a lower endoscopy procedure on Plaintiff that showed cecal lipoma, colon polyps, and internal hemorrhoids.[60] A pathology report described Plaintiff's condition as "mild active colitis."[61] A gastric emptying study showed that

---

[51]A.R. 214.

[52]A.R. 215-16.

[53]A.R. 176-200.

[54]A.R. 197.

[55]*Id.*

[56]A.R. 190.

[57]A.R.191-92.

[58]A.R. 184.

[59]A.R. 176.

[60]A.R. 258-59.

[61]A.R. 260.

her stomach emptied at a lower rate than normal.[62] Dr. Tahiri performed an upper endoscopy on

May 4, 2007, that showed esophagitis and gastritis.[63] Plaintiff was prescribed Aciphex for acid

reflux.[64]

       Plaintiff was treated for angina by Dr. Summerhill on an undocumented date between

January and April 2007. On January 23, 2007, Plaintiff was diagnosed with GERD, a peptic

ulcer, fatigue, and heart disease.[65] Plaintiff saw Dr. Phillips on January 31 and February 8, 2007,

for stomach pain and nausea, and she was prescribed Phenergan to treat her stomach pain and

nausea.[66] On June 4, 2007, Plaintiff saw Dr. Phillips for bilateral leg and hip pain and arm

stiffness.[67] Naproxen was prescribed to treat her pain.[68] Plaintiff saw Dr. Summerhill on July 6,

2007, for leg, hip, and back pain.[69] Dr. Summerhill diagnosed degenerative nerve disease and

GERD.[70] She was prescribed Darvocet.[71] On August 2, 2007, Plaintiff was seen by a doctor for

panic attacks and anxiety.[72] On September 5, 2007, she was seen for chest pain.[73] On September

---

[62]A.R. 262.

[63]A.R. 256-57.

[64]*Id.*

[65]A.R. 316.

[66]A.R. 283-84, 317-18.

[67]A.R. 281, 320.

[68]*Id.*

[69]A.R. 280, 321.

[70]*Id.*

[71]*Id.*

[72]A.R. 279, 322.

[73]A.R. 278, 343.

27, 2007, Dr. Phillips saw Plaintiff and diagnosed degenerative joint disease of the back and

hips, chronic back pain, anxiety disorder and fatigue/depression.[74] On October 22, 2007, Plaintiff

saw Dr. Phillips with complaints of a headache that persisted for two weeks.[75] On February 25,

2008, Plaintiff was seen by Dr. Phillips after experiencing a burning and stinging sensation in

her feet.[76] Dr. Phillips diagnosed her with neuropathy and prescribed Lyrica for pain.[77] The

medication did not ease her pain, and she was seen again on April 28, 2008, after passing out

while driving.[78]

### 2.   Testimony at ALJ hearing

Plaintiff testified before the ALJ that she quit working because she "couldn't do it

anymore."[79]  She described having difficulty being on her feet all day and swelling in her feet

and legs.[80]  Plaintiff explained that she did little more than watch television and nap during the

day because of her medications.[81] She said that she has a disorder that prevents her stomach from

emptying normally which makes her nauseated.[82]  She told the ALJ that she has to take

Phenergan about once a week, which makes her drowsy.[83] According to Plaintiff, her stomach

---

[74]A.R. 276, 324.

[75]A.R. 275, 325.

[76] A.R. 328.

[77]*Id.*

[78]A.R. 330.

[79]A.R. 42.

[80]A.R. 43.

[81]A.R. 44.

[82]*Id.*

[83]A.R. 45.

problems also give her diarrhea, and because she cannot predict when it will effect her, she feels that she must stay near a restroom.[84] She also experiences problems with frequent urination caused by Lasix which she takes for her heart condition and swelling.[85] Plaintiff testified that Lorazepam controls her anxiety problems, and she only went to the hospital for anxiety attacks after running out of medication.[86] She said that the anxiety medication also makes her drowsy.[87] Plaintiff testified that arthritis caused her to have back and hip pain depending upon her level of activity.[88] She testified that she would probably miss up to two days a week of work because of her conditions.[89]

### C.    The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability in June 2006.[90]  The ALJ also found that the medical records established that Plaintiff has angina status post antral septal repair, mild non-obstructive coronary artery disease, and mild active colitis, esophagitis, and diffuse gastritis.[91]  Without explanation, the ALJ found that Plaintiff has a severe impairment within the meaning of the Social Security Regulations, but that she does not have any impairment or combination of impairments that would meet the severity requirement listed in Appendix 1 to Subpart P,

---

[84]A.R. 45-46.

[85]A.R. 43.

[86]A.R. 48.

[87]*Id.*

[88]A.R. 52.

[89]A.R. 53.

[90]*Id.*

[91]*Id.*

Regulations No. 4.[92]  Therefore, the ALJ went to step four of the sequential evaluation process to determine "whether Plaintiff retains the residual functional capacity to perform her past work."[93] The ALJ analyzed the medical evidence regarding Plaintiff's claims of severe headaches, leg pain and swelling exacerbated by standing, chest pain, stomach, and intestinal problems.[94]  He also listed Plaintiff's subjective complaints and found them "not . . . credible to the extent alleged."[95]  He concluded that Plaintiff is not disabled because she is capable of performing a full range of medium work activity.

## III.    DISCUSSION

### A.    New Evidence Submitted to the Appeals Council

Plaintiff contends that the Commissioner committed reversible error by failing to comply with 20 C.F.R. § 404.970(b) regarding new and material evidence submitted to the Appeals Council.  The Appeals Council stated that the additional medical evidence "does not provide a basis for changing the [ALJ's] decision."[96]  Where, as here, the Appeals Council considers new evidence but denies review, the proper inquiry is whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence.[97]

Plaintiff presents two arguments alleging that the Appeals Council erred in not reviewing the ALJ's decision. First, Plaintiff argues that the Appeals Council did not consider the new evidence and that the new evidence is contrary to the ALJ's finding that Plaintiff sought only

---

[92]*Id.*

[93]*Id.*

[94]A.R. 11–13.

[95]A.R. 13.

[96]A.R. 2, 4.

[97]*Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

minimal treatment for her condition. Second, Plaintiff alleges that the Appeals Council erred by not obtaining an updated medical opinion after being presented with new evidence that could have changed the ALJ's decision.

The additional evidence submitted to the Appeals Council consisted of forty-nine pages of medical records documenting four visits to Drs. Phillips and Summerhill.[98]  These additional records describe Plaintiff's continued treatment for back pain and anxiety, and new diagnoses of neuropathy and fibromyalgia.[99] Included in these records is the report of Plaintiff's treatment after she became unconscious while driving.[100] The reports also document that Plaintiff's doctors continued to prescribe various medications to treat her maladies.[101] While supporting the assertion that Plaintiff continued to receive medical treatment for her injuries, the reports do not show any physical abnormalities that would explain Plaintiff's complaints of pain. The Commissioner is correct that the records do not show objective clinical and laboratory diagnostic tests to support the various diagnoses of Plaintiff's condition. After diagnosing Plaintiff with neuropathy, Dr. Phillips reported normal findings in his physical exams of Plaintiff in January and April of 2008.[102] To be eligible for Social Security Disability benefits, a person must show a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[103] The new evidence that Plaintiff submitted to the Appeals Council did not show

---

[98]A.R. 4.  Plaintiff indicates that the ALJ had the records through October 22, 2007.

[99]A.R. 327.

[100]A.R. 330.

[101]*Id.*

[102]A.R. 227, 230.

[103]42 U.S.C. § 423 (d)(3).

any abnormalities that were demonstrated with clinical or laboratory diagnostic techniques.

Additionally, the new evidence is cumulative of the evidence reviewed by the ALJ. It is clear

from the record that the new evidence would not have been sufficient to alter the ALJ's decision.

Plaintiff's second argument related to the Appeals Council decision appears to be based

on a misreading of Social Security Regulation 96-6p. Plaintiff argues that the Appeals Council

must obtain an updated medical opinion when presented with new medical evidence that could

change the state agency medical consultant's findings. However, the regulation actually provides

that the Appeals Council has to update the medical opinion of an expert only in two situations:[104]

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

It does not appear that plaintiff is arguing that the first situation applies, because additional

medical evidence was received by the Appeals Council. The second situation also seems

inapplicable, because Plaintiff doesn't allege that her impairments are equivalent to a specific

listed impairment. Thus the Appeals Council did not have to provide an updated opinion from a

state agency consultant before affirming the decision of the ALJ.

### B.      Nonexertional Impairments

Plaintiff's final argument alleges that the ALJ erred in not considering her nonexertional

impairments when determining that her Residual Functional Capacity ("RFC") would allow her

to perform the full range of medium work. Plaintiff indicates that her nonexertional impairments

---

[104]SSR 96-6p.

are: pain, colitis, GERD, gastritis, anxiety, and obesity.[105] However, these are ailments and symptoms, they are not nonexertional impairments per se. "[A] symptom in itself is neither exertional nor nonexertional."[106] Instead the focus should be on how the impairment limits or restricts the ability of the claimant to perform her past relevant work.[107] The only nonexertional limitation identified by Plaintiff appears to be her problems with frequent urination and diarrhea. The record shows that the ALJ considered these limitations but found that they were not so severe as to prevent her from performing past relevant work.[108] Plaintiff does not identify any other limitations or restrictions caused by what she claims as nonexertional impairments. Because Plaintiff didn't show how these impairments limited her ability to perform past relevant work, the ALJ wasn't bound to consider them in determining Plaintiff's RFC. Therefore the ALJ did not err when he determined that despite Plaintiff's impairments she would still be able to perform medium work.

## CONCLUSION

After reviewing all of the evidence in the record, I find that there is sufficient evidence to support the Commissioner's determination that Plaintiff did not meet the requirements to be eligible for Social Security Disability Benefits. Accordingly, Plaintiff's appeal is DENIED and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED this 6th day of July, 2011.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[105]Plaintiff's Brief 17.

[106]SSR 96-4p.

[107]SSR 96-8p.

[108]A.R. 13.

14